PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 15 2000
THOMAS K. KAHN
CLERK

_____

No. 98-5917

_____

D. C. Docket No. 96-3240-CV-WPD

RONNY J. HALPERIN,

Plaintiff-Counter-Defendant-Appellee,

versus

REGIONAL ADJUSTMENT BUREAU, INC.,
UNITED STUDENT AID FUNDS, INC.,

Defendants-Appellants,

UNITED STATES DEPARTMENT OF EDUCATION,

Defendant-Counter-Claimant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 15, 2000)**

Before BIRCH and MARCUS, Circuit Judges, and ALAIMO[*], Senior District Judge.

BIRCH, Circuit Judge:

_____

[*]Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

The United States Department of Education ("Education"), United Student Aid Funds, Inc. ("USAF") and Regional Adjustment Bureau, Inc. ("RAB") (collectively, the "Creditors") appeal the district court's order rejecting the report and recommendation of the magistrate judge, denying their motions for summary judgment, and granting Ronny J. Halperin's ("Halperin's") motion for summary judgment. The district court issued a declaratory order concluding that under section 488A of the Higher Education Act, codified at 20 U.S.C. §1095a ("§ 1095a"), multiple holders of defaulted student loans are subject to a cumulative garnishment limit of ten percent of the debtor's disposable pay and imposing an injunction against the Creditors, requiring that they discontinue garnishing an aggregate amount totaling more than ten percent of Halperin's disposable pay. The Creditors argue that the ten percent limit under § 1095a applies to the single garnishment by an individual note holder and the cumulative garnishment limit of twenty-five percent per debtor established by the Consumer Credit Protection Act (CCPA), 15 U.S.C. § 1673, provides the maximum aggregate remedy available to multiple note holders seeking multiple garnishments. Thus, they contend that each holder of a defaulted student loan should be allowed to garnish up to ten percent of the debtor's disposable pay under § 1095a(a), so long as the total garnishment by all note holders does not exceed the CCPA's twenty-five percent limit. Additionally, Education argues that, under 20

2

U.S.C. § 1082(a)(2), the district court did not have jurisdiction to enter injunctive relief against Education.[1]  We REVERSE the district court's order, VACATE the injunction against the Creditors, and REMAND for entry of judgment in favor of the Creditors.

## I.  BACKGROUND

The facts in this case are undisputed.  We provide only a brief review of the factual and procedural history.

Halperin is an attorney who financed his legal education with seven loans obtained under the Federal Family Education Loan Program ("FFELP").  He also cosigned a loan to finance his son's education.  Despite earning $145,000 annually, he has defaulted on each of these loans, four of which are currently held by Education and four by USAF.   As of October 20, 1997, the unpaid loans totaled $56,250.52.[2]  RAB is the collection agent for USAF.

During 1996, Education issued an Administrative Garnishment Order to Halperin's employer to withhold $200 from Halperin's bi-weekly paycheck.  Later that year, RAB, acting on behalf of USAF, issued an Administrative Garnishment

---

[1]We do not address this argument since our holding on the merits vacates the declaratory judgment entered against the Creditors, including Education.

[2]  R1-32.

Order for Halperin's employer to withhold an additional ten percent from the Halperin's bi-weekly paycheck. As a result of both Garnishment Orders, 16.83% of Halperin's bi-weekly pay or 14.83% of Halperin's total disposable pay for 1996 was withheld.[3]

Halperin sued the Creditors, claiming that their garnishments exceeded the amount permitted by § 1095a. The Creditors countered by arguing that the 10% limit found in § 1095a applies only to individual note holders and that 15 U.S. C. § 1673 sets the limit for multiple wage garnishments at 25%. The parties stipulated to the facts and moved for summary judgment as to the construction of § 1095a. The magistrate judge recommended that Halperin's motion be denied. However, the district court rejected this recommendation and held that § 1095a restricted the garnishment of wages for defaulted student loans to 10% of the debtor's disposable wages and, accordingly, enjoined the Creditors from garnishing, on a combined basis, more than 10% of the Halperin's disposable wages. The Creditors appeal this order.[4]

---

[3]Halperin earned $145,132.94 during 1996, including salary and bonuses.

[4]Halperin has filed a motion requesting that he be awarded attorney fees for this appeal pursuant to either 28 U.S.C. § 2412 or Fed. R. Civ. P. 23. However, his motion is premised upon the contingency that he would be entitled to attorney fees under 28 U.S.C. § 2412 or Fed. R. Civ. P. 23 if he prevailed in this appeal. Because, under our holding in this case, Halperin does not prevail, the contingency fails and, accordingly, we deny his motion for attorney fees.

## II. DISCUSSION

In 1991, Congress amended the Higher Education Act to authorize the Secretary of Education (the "Secretary") or guaranty agencies to collect a defaulted student loan by administrative garnishment of up to 10% of the defaulter's disposable pay. See Higher Education Technical Amendments of 1991, Pub. L. 102-26; 137 Cong. Rec. S7291-02, S7369; 20 U.S.C. § 1095a.[5] The purpose of this amendment was threefold: (1) it "provide[d] uniform authority under which the Secretary and guaranty agencies could garnish the pay of student loan defaulters," 137 Cong. Rec. S7291-02, S7369, (2) "it eliminate[d] the unnecessary and unduly costly incentive in current law ... that permit[ed] guaranty agencies to retain an additional five percent of collections," id., and (3) it increased the efficiency of collecting defaulted student loans because "it is not cost-effective for

---

[5]Specifically, 20 U.S.C. § 1095a provides:

(a) Garnishment requirements:

Notwithstanding any provision of State law, a guaranty agency, or the Secretary in the case of loans made, insured or guaranteed under this subchapter . . . that are held by the Secretary, may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment under a repayment agreement with the Secretary, or in the case of a loan guaranteed under part B of this subchapter on which the guaranty agency received reimbursement from the Secretary under section 1078(c) of this title, with the guaranty agency holding the loan, as appropriate, provided that –

(1) the amount deducted for any pay period may not exceed 10 percent of disposable pay . . ..

the Department of Justice (DOJ) to pursue defaulted loans in small dollar amounts through the judicial process," id.  Moreover, the additional monies collected on defaulted student loans as a result of the administrative garnishments were allocated by Congress to provide funding for the extension of unemployment benefits.  See 137 Cong. Rec. S16826-02, S16832-33 (Senator Kassebaum discussing legislation extending unemployment benefits and noting "that another way we are funding the extension is to make a number of changes in the Federal Student Aid Program.").  At issue in this case is the question of whether, through § 1095a, Congress intended to limit the amount garnished from a defaulting debtor's disposable pay to 10% for each individual note holder or cumulatively for all holders of a debtor's defaulted student loans.  This is a question of statutory interpretation which we review de novo.  See United States v. Veal, 153 F.3d 1233, 1245 (11th Cir. 1998), cert. denied, ___ U.S. ___, 119 S. Ct. 2024, 143 L. Ed. 2d 1035 (1999).

A.  Plain Language of the Statute

"The starting point for all statutory interpretation is the language of the statute itself."  United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999) (interpreting 18 U.S.C. § 1345(a)(2) and finding the plain language of the statute

6

ambiguous). The district court emphasized that Congress used the plural word "loans" to describe the instruments the Secretary was authorized to collect by garnishing the debtor's disposable pay and found that "the use of the plural in the opening sentence implies that the ten percent limit applies to all loans." See R3-128 at 4-5 (quoting 20 U.S.C. § 1095a: "'a guaranty agency, or the Secretary in the case of loans made, insured or guaranteed under this subchapter that are held by the Secretary, may garnish the disposable pay of an individual to collect the amount owed by the individual;'" emphasis in district court order). In contrast, the Creditors argue that the plain language of the statute supports the conclusion that Congress intended only to limit the garnishment authority of individual note holders to 10% of the debtor's disposable pay under § 1095a. The Creditors point to use of singular nouns to refer to the note holder, guaranty agency, and defaulted loans, as well as the use of the connector "or" to group the Secretary and the guaranty agency within the opening paragraph of § 1095a(a), as evidence of Congressional intent that the 10% limit on garnishments be applied to each individual note holder, not the creditors collectively. See 20 U.S.C. § 1095a ("a guaranty agency, or the Secretary in the case of loans made, insured or guaranteed under this subchapter . . . that are held by the Secretary, may garnish the disposable pay of an individual . . . or, in the case of a loan guaranteed under part B of this

7

subchapter on which <u>the guaranty agency</u> received reimbursement from the Secretary . . ., with the <u>guaranty agency</u> holding <u>the loan</u>;" emphasis added). The Creditors also assert that the use of singular words to describe the note holder seeking garnishment and the defaulted debt in subsections § 1095a(a)(2)-(8) further supports the conclusion that the 10% limitation in subsection (1) applies only to individual note holders.

While we must be cautious that these "linguistic arguments" do not "make too much of too little," <u>National Federation of Federal Employees, Local 1309 v. Department of Interior</u>, 526 U.S. 86, ___, 119 S. Ct. 1003, 1008, 143 L. Ed. 2d 171 (1999), we find the repeated use of singular nouns to characterize the defaulted loans and the creditor seeking garnishment throughout § 1095a(a) to be more convincing evidence of Congressional intent than the solitary use of the plural noun "loans" in the opening sentence of the section. Moreover, we find that the grammatical construction of § 1095a suggests that the word "loans" as used in § 1095a(a) refers only to those debt instruments held by the Secretary for which the Secretary is authorized to seek garnishment, not all of the loans that either the Secretary or a guaranty agency may seek to collect by garnishing the debtor's pay.

Although we must look beyond specific words and terms to the "language and design of the statute as a whole" when ascertaining the plain meaning of the

statute, we find the district court's reliance upon 20 U.S.C. § 1092c inappropriate. Legal Environmental Assistance Foundation, Inc. v. United States Environmental Protection Agency, 118 F. 3d 1467, 1474 (11th Cir. 1997) (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S. Ct. 1811, 1818, 100 L. Ed. 2d 313 (1988). This section requires that: "To the extent practicable, and with the cooperation of the borrower, eligible lenders shall treat all loans made to a borrower under the same section of part B of this subchapter as one loan and shall submit one bill to the borrower for the repayment of all such loans . . .." 20 U.S.C. § 1092c(a). Section 1092c(b) further requires that: "To the extent practicable, and with the cooperation of the borrower, the guaranty agency shall ensure that a borrower only have one lender, one holder, one guaranty agency, and one servicer with which to maintain contact." Congress expressly restricted the requirements of this statute to the limits of practicality and, thus, this section cannot be interpreted to require cooperation among multiple note- holders to treat all their respective loans to an individual borrower as a single obligation. Accordingly, we find this section is inapplicable to the analysis of the language in § 1095a(a). We conclude that, after considering both the specific words used within § 1095a and the entire statutory context, the plain language of § 1095a supports the construction imposing a 10% limit on individual note holders, not the collective creditors.

9

B.  Legislative History

Although we believe that the plain language of §1095a(a) supports the conclusion that Congress intended the 10% limitation of garnishments in subsection "(1)" to apply to each lender, not cumulatively to all lenders, we recognize that the use of different forms of the word "loan" within § 1095a may yield some "internal inconsistency" or ambiguity regarding the application of the 10% limit on garnishments.  See Veal, 153 F.2d at 1245 (quoting United States v. Turkette, 452 U.S. 576, 580, 101 S. Ct. 2524, 2527, 69 L. Ed. 2d 246 (1981)).  Accordingly, our analysis shifts to "extrinsic sources of congressional intent." Alumax Inc. v. Commissioner of Internal Revenue, 165 F.3d 822, 824 (11th Cir. 1999).  Nonetheless, we find that the legislative history supports our construction of § 1095a.  The section by section analysis of the proposed preauthorization of the 1991 amendments explains that "the bill would authorize guaranty agencies or the Secretary, depending on who holds the loan, to garnish up to 10 percent of the defaulter's disposable pay." 137 Cong. Rec. S7291-02, S7369.  This statement

makes it clear that Congress intended the 10% limitation to apply to each note

holder individually.[6]

   C.  Department of Education Regulation Interpreting § 1095a

_____

   [6]The district court cites the unpublished opinion United States of America v. Starr, Case No. 90-14720-HOEVELER (S.D. Fla. May 8, 1998) to support its finding that the ten percent limitation applies to the aggregate of all administrative garnishments under § 1095a. See R3-128 at 6-7. In Starr, the district court quoted statements by Senator Kassebaum noting that monies collected by garnishing the wages of defaulted student loan debtors would "not be painless revenue" and that "[t]he student loan defaulters we are going after are for the most part not the country club doctors – but rather unwed mothers trying to raise a family on a minimum wage job. Garnishment, rightly or wrongly, is going to impose severe hardships on these people." 137 Cong. Rec. S16826-02, S16833. The Starr court inferred from these statements that "the establishment of a 10% garnishment rate in 20 U.S.C. § 1095a must be viewed as somewhat of a compromise – one designed to effectively recover funds without imposing undue hardship on lower income student loan debtors." Starr at 8. We find that the Starr court's interpretation of Senator Kassenbaum's statement is inconsistent with the context in which the statement was made. Senator Kassenbaum was not discussing the amendments to the Higher Education Act, but complaining that the funding for the extension of unemployment benefits was being provided by the recovery of defaulted student loans through garnishment. See 137 Cong. Rec. S16826-02, S16832 ("we should be straightforward with the American people. We should not talk about trust funds or money that is set aside. In the future, if we are going to raise taxes, we should simply tell people that is what we are doing and not lead them to think we will put money in a special vault to be spent for some special purpose."). Thus, we do not find this statement to be persuasive evidence of Congressional intent regarding the application of the ten percent limit on garnishments in § 1095a. Moreover, the Starr court acted to deny a single note holder's attempt to garnish more than 10% of the student loan defaulter's wages, not the cumulative garnishment of multiple note holders.

   Recently, another district court relied upon the analysis of legislative history presented in Starr and adopted its theory that the ten percent limit represented a compromise to protect low income student loan debtors. See Green v. Kentucky Higher Education Assistance Authority, Civil Action No. 1: 97-1022-RV-C (S.D. Ala. Feb. 23, 1999) (interpreting § 1095a to prevent multiple note holders from collectively garnishing more than ten percent of a student loan defaulter's disposable pay). We note that, like the Starr court, the court in Green incorrectly relied upon Senator Kassenbaum's statements regarding funding for the extension of unemployment benefits to ascertain congressional intent for § 1095a and, therefore, misinterpreted § 1095a.

11

Although we find that both the plain language of § 1095a and its legislative history sufficiently explicate Congress' intent with regard to the application of the 10% limitation on garnishments, we note that Education has promulgated a regulation addressing the 10% limit imposed under § 1095a. See 34 C.F.R. § 682.410(b)(10)(i)(A). Assuming arguendo that language of § 1095a remains ambiguous, we turn to Education's interpretation of the statute to determine whether it deserves any deference.[7] See Legal Environmental Assistance Foundation, 118 F. 3d at 1474 ("It is only after we have determined that words used by Congress are ambiguous, or that Congress left a gap in the statutory language, that we turn to the agency's interpretation of these words to ascertain whether it deserves any deference.").

Education interpreted § 1095a to allow a guaranty agency to garnish from the student loan defaulter's wages "an amount that does not exceed the lesser of 10 percent of the borrower's disposable pay for each pay period or the amount

---

[7]The district court did not consider whether Education's interpretation of § 1095a in 34 C.F.R. § 682.410(10)(i)(A) was entitled to deference because it relied upon the plain language of the statute to support its conclusion. See R3-128 at 7 n. 5; see also K Mart Corp., 486 U.S. at 291, 108 S. Ct. at 1817 ("'The traditional deference courts pay to agency is not to be applied to alter the clearly expressed intent of Congress.'" (citation omitted)). However, our contrary finding that the plain language of § 1095a and its legislative history demonstrate that Congress intended the 10% limitation to apply to individual note holders seeking administrative garnishment is further supported by Education's interpretation § 1095a in 34 C.F.R. § 682.410(10)(i)(A).

permitted by 15 U.S.C. 1673 . . .." 34 C.F.R. § 682.410(b)(10)(i)(A). We agree with the magistrate judge that this regulation supports construction of § 1095a such that it provides a limit for garnishment by individual note holders while the CCPA limits the cumulative amount which may be deducted from the defaulter's disposable pay by multiple garnishments.[8] See R3-121 at 8-9. Further, we agree that, because this is a reasonable and permissible interpretation of the § 1095a, it is entitled to deference. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984); INS v. Aguirre-Aguirre, 526 U.S. 415, ___, 119 S. Ct. 1439, 1445, 143 L. Ed. 2d 590 (1999).

Moreover, as the magistrate judge noted, Education's interpretation of § 1095a appropriately harmonizes § 1095a and the CCPA. See R3-121 at 7-9. (quoting Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 533, 115 S. Ct. 2322, 2326, 132 L. Ed. 2d 462 (1995) ("'[W]hen two statutes are

---

[8]15 U.S.C. § 1673 provides in pertinent part:
        (a) Maximum allowable garnishment
        Except as provided in subsection (b) of this section and in section 1675 of
this title, the maximum part of the aggregate disposable earnings of an individual
for any workweek which is subjected to garnishment may not exceed
        (1) 25 per centum of his disposable earnings for that week, or
        (2) the amount by which his disposable earnings for that week exceed
thirty times the Federal minimum hourly wage . . .
whichever is less . . ..

capable of co-existence . . . it is the duty of courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" (citation omitted)) . Under Education's interpretation, § 1095a operates to improve the efficiency with which defaulted student loans are collected, while the CCPA protects debtors from the hardships resulting from the potential limitless multiple garnishments. See id. Because § 1095a and the CCPA are capable of co-existence and are not in conflict, we conclude that the district court's finding that § 1095a specifically limited the garnishment of student loans to 10% and superceded the CCPA's existing general limitation on multiple garnishments of consumer debtors was incorrect. See Radzanower v. Touche Ross & Co., 426 U.S. 148, 153-54, 96 S. Ct. 1989, 1992-93, 48 L. Ed. 2d 540 (1976) (holding that a general statute is superseded by a more recent specific statute only if the two statutes are in conflict).

## CONCLUSION

The plain language of 20 U.S.C. § 1095a, its legislative history, and Education's regulation interpreting the statute all support the statutory construction whereby the 10% limit in § 1095a(a)(1) applies to each individual note holder and multiple garnishments are governed by the limitations in the CCPA. Therefore,

we REVERSE the district court's order and VACATE the injunction against the

Creditors.  We REMAND for entry of judgment in favor of the Creditors.