**EDUCATIONAL CREDIT
MANAGEMENT CORP.**
Plaintiff

v.

**CENTRAL EQUIPMENT COMPANY**
Defendant

No. CIV.A.05–110–KSF.

United States District Court,
E.D. Kentucky,
Central Division at Lexington.

March 2, 2007.

John Allan Combs, Frost Brown Todd LLC, Lexington, KY, for Plaintiff.

Central Equipment Company, Lexington, KY, Pro se.

Spencer D. Noe, Donald M. Wakefield, Bowles Rice McDavid Graff & Love, LLP, Lexington, KY, for Defendant.

## ORDER

FORESTER, Senior District Judge.

This matter is before the Court on Educational Credit Management Corporation's ("ECMC") Motion for Award of Damages [DE # 25] and Central Equipment Company's ("Central Equipment") Motion to Compel Acceptance of Tendered Payment [DE # 27] and Motion to Reconsider [DE # 35] this Court's Order dated January 9, 2007, granting ECMC's Motion to Seal. These matters, having been fully briefed, are ripe for review.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff ECMC is a guaranty agency under the Federal Family Education Loan Program. Anita L. Butler, an employee of Defendant, defaulted on her student loan owed to ECMC and had an outstanding balance of $7,032.79 as of November 8, 2005. Following a hearing on October 7, 2004, the United States Department of Education determined that the loan was subject to collection through an administrative wage garnishment. A Wage Withholding Order was issued to Defendant on November 18, 2004, directing it to deduct and pay ECMC "an amount that does not exceed ten percent (10%) of the debtor's disposable pay for each pay period" beginning with the first pay period following receipt of the notice. Defendant first responded to ECMC on January 13, 2005, when Paul Huber, President of Central Electric, advised that it would not "process the paperwork" for the wage garnishment without a court order. On January 21, 2005, ECMC sent a second notice of the Order of Withholding advising that attorney fees, costs and punitive damages could be recovered from an employer who fails to withhold wages after receipt of an or-

der. In response to this notice, Mr. Huber stated in a telephone call that he did not intend to comply with the Order.[1]

On February 16, 2005, ECMC sent Defendant a demand letter citing applicable law and warning that litigation, with its costs and attorney fees, would be the next step, absent compliance with the Order. ECMC filed its Complaint March 28, 2005 and moved to amend the complaint on April 19, 2005 to include a request for punitive damages. Defendant did not make any payments pursuant to the Order. On May 16, 2005, Mr. Huber called the Kentucky Higher Education Assistance Authority regarding Ms. Butler's account, resulting in KHEAA asking ECMC to return the account.[2] On July 6, 2005, Defendant faxed ECMC a letter saying it "enclosed" a check for $1,161.99 representing 10 percent of Butler's earnings to date plus the $250 filing fee and said it would withhold in the future. This "offer," which did not include any amount for attorney fees, stated it was to be in full settlement of the claim. Defendant never sent the check to ECMC.

On August 12, 2005, ECMC offered to settle for the amount required to be withheld and future compliance, plus attorney's fees and costs, which then totaled $5,602.59. It warned that continuing to litigate would increase the fees. On September 20, 2005, Defendant countered that it would comply with the Order, but would only pay $2,000 toward the fees. Alternatively, it offered to mediate the attorney's

fees. ECMC did not accept this counteroffer. On September 28, 2005, an Amended Scheduling Order set the case for trial March 7, 2006 and required dispositive motions by December 30, 2005. Accordingly, ECMC's counsel continued trial preparations, including dispositive motions.

ECMC moved for summary judgment on November 22, 2005, requesting damages for amounts that should have been withheld, future compliance, and attorney's fees and costs [DE # 17]. Defendant did not dispute ECMC's facts and even said "it is not disputed that Defendant has not complied with Plaintiff's purported Withholding Order." [DE # 18, pp. 2–3]. Defendant strongly opposed the summary judgment motion, however, with multiple technical arguments regarding the validity of the order and noted that KHEAA had requested ECMC to return the account. On February 3, 2006, this Court granted ECMC's motion, stating "[t]he objections of the defendant are not well taken" [DE # 21, p. 7], and entered Judgment accordingly [DE # 22].

Despite this Court's Judgment, Defendant still did not make payments to ECMC. ECMC agreed to extend the time to file its motion for attorney's fees until April 28, 2006 in the hope that no motion would be necessary. On March 6, 2006, ECMC offered to settle the matter for the amount required under the Withholding Order, future compliance, and its attorneys' fees and costs to date. In exchange, it agreed not to seek punitive damages

---

1. The facts in Troy Gunderman's affidavit supporting ECMC's Motion for Summary Judgment were not opposed by affidavit or other evidence in Central Equipment's Response [DE # 18]. Paul Huber's affidavit [DE # 26–2], filed three months after summary judgment and saying he only requested a "signed document," is too late to contradict ECMC'S evidence. More importantly, Huber's new affidavit conflicts with his "Answer" [DE # 2] saying he demanded "legal proof of the judgment," "Official Legal Documentation," or "some form of legal judgment."

2. Letter from Elaine Brumback [DE # 18–3]. ECMC noted this was the first time in at least eight years that KHEAA requested a loan back, and it declined the request [DE 26–8, p. 2]. Counsel for Defendant was Chair Elect of the KHEAA in April 2006. *Id.*

[DE # 25–8]. On April 10, ECMC again wrote, responding to questions raised in a telephone call from Defendant's counsel regarding the balance Butler owed on her loan, and reiterating its entitlement to the full amount of its attorneys' fees. It repeated its earlier offer. In a letter dated April 7 but received by ECMC after April 10, Defendant's counsel wrote that he had "an appointment with the KHEAA to see what their understanding of Ms. Butler's loan status was." [DE # 25–10]. He also claimed Defendant offered to confess judgment in September and that he "failed to see what benefit your Motion For Summary Judgment gained your client." The letter argued that only a small percentage of ECMC's attorney fees should be awarded after the September settlement offer. *Id.* On April 20, Defendant sent a check for $7,231.91, the full amount Butler owed on her student loan as of April 5, 2006, even though only half that amount was due from Defendant under the Withholding Order. The transmittal letter did not explain why Defendant wanted to pay off Butler's student loan for her, but it did say ECMC's attorneys' fees would have to be litigated. ECMC returned the check and advised it was left with no choice but to file a summary judgment motion for fees and punitive damages, but it would still be willing to discuss settlement if Defendant was interested [DE # 26–8].

ECMC filed its Motion for Damages April 28, 2006 with an accompanying affidavit for attorney fees of $17,320.00 and costs of $328.70 through April 21, 2006 [DE # 25]. Defendant responded on May 4 that it had no obligation to withhold or make payments to date because ECMC sent it a Release of Order of Withholding on March 6, 2006 [DE # 26 at 4].[3] Defendant further argued it had made a Rule 68 Offer of Judgment by its September 2005

letter, that ECMC had not received a more favorable judgment, and that ECMC was now required to pay Defendants' attorney fees [*id.* at 5]. It contended factors for reasonable attorney fees under the Civil Rights Act were applicable to this case and analyzed those factors in its favor. It claimed that a mere signed verification of the wage withholding would have ended the matter at the outset [*id.* at 7] and that its settlement offers were unreasonably rejected. Defendant claimed there was insufficient proof of attorney fees and that most fees were unnecessary as the September 2005 settlement offer should have been accepted [*id.* at 8–10]. Finally, it argued that punitive damages were not warranted and requested oral argument on that issue [*id.* at 10–13].

The same day Defendant responded to the Motion for Damages, it filed a Motion to Compel ECMC to accept its April 20 tender of payment of $7,231.91 for Butler's loan. ECMC necessarily incurred additional attorney fees responding to this motion. When ECMC moved to file its billing statements under seal for in camera review by the Court, Defendant objected that it had a right to review any billing entries to object regarding the reasonableness of the fees and that, based on state law evidence rules, billing statements were not covered by the attorney-client privilege [DE # 31]. ECMC incurred attorneys' fees to respond to these arguments. On January 9, 2007, this Court granted ECMC's motion to file the billing statements under seal. Defendant filed a Motion to Reconsider saying it was not contesting ECMC's entitlement to attorney fees, but such an award must be limited to reasonable fees and that it had a right to review the billing statements for reasonableness [DE # 35]. ECMC, once again, incurred attorney fees to respond.

---

**3.** ECMC admitted sending this Release in error and advised Defendant of the error by fax on March 16, stating the Order of Withholding was still in effect [DE # 29, p. 2].

## II. ANALYSIS

### A. Motion for Damages

■ Congress amended the Higher Education Act in 1991 to authorize the Secretary of Education or a guaranty agency to collect defaulted student loans by administrative garnishment of up to 10 percent of the defaulting party's disposable pay. Higher Education Technical Amendments of 1991, Pub.L. 102–26; 137 Cong. Rec. S7291–02, S7369; 20 U.S.C. § 1095a. The legislative history reflects that the amendments would "provide a uniform authority under which the Secretary and guaranty agencies could garnish the pay of student loan defaulters," allow the Secretary to pursue loans administratively "because it is not cost-effective for the Department of Justice (DOJ) to pursue defaulted loans in small dollar amounts through the judicial process," and "eliminate the unnecessary and unduly costly incentive in current law ... that permits guaranty agencies to retain an additional five percent of collections." 137 Cong. Rec. § 7291–02, S7369, Section 499. Thus, the administrative process in the amendments unified and simplified collection of defaulted student loans and sought to avoid litigation.

ECMC issued an administrative Order of Withholding pursuant to 20 U.S.C. § 1095a to Defendant on November 18, 2004, and this Court granted summary judgment that it was a valid order. Regarding enforcement of such orders, the statute says:

> [T]he employer shall pay to ... the guaranty agency as directed in the withholding order issued in this action, and shall be liable for, and the ... guaranty agency .. may sue the employer in State or Federal court of competent jurisdiction to recover, any amount that such employer fails to withhold from wages due an employee following receipt of such employer of notice of the withholding order, plus attorneys' fees, costs, and, in the court's discretion, punitive damages....

20 U.S.C. § 1095a(a)(6). The language of the statute is mandatory: "the employer shall pay ... and shall be liable for ... any amount that such employer fails to withhold from wages ..., plus attorneys' fees, costs...." *Id.;* emphasis added. The only discretion given to the court is whether to impose punitive damages.

Nonetheless, Defendant asks this Court to insert the modifier "reasonable" before the words "attorneys fees" in 20 U.S.C. § 1095a(a)(6). It relies on cases such as *Barnes v. City of Cincinnati,* 401 F.3d 729, 745 (6th Cir.2005) for the factors to be considered in an award of reasonable attorney's fees. *Barnes,* however, involved an award of fees pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). That statute states in part: "the court, in its discretion, may allow the prevailing party ... a **reasonable** attorney's fee (including expert fees) as part of the costs..." (emphasis added). Similar discretion is found in 42 U.S.C. § 1988(b) which provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney fee as a part of the costs...." There are a number of similar discretionary statutes.[4] There are also

---

4. *See* 20 U.S.C. § 1415(I)(3)(B) ("the court, in its discretion, may award reasonable attorneys' fees as part of the costs"); 5 U.S.C. § 552a(g)(4)(B) ("reasonable attorney fees as determined by the court"); 42 U.S.C. § 12205 ("the court or agency, in its discretion, may allow ... a reasonable attorney's fee"); 31 U.S.C. § 3730(d) ("plus reasonable attorneys' fees and costs"); 17 U.S.C. § 505 ("the court may also award a reasonable attorney's fee"); 42 U.S.C. § 9659(f) ("the court ... may award costs of litigation (including reasonable attorney and expert witness fees)").

statutes that mandate an award of attorney fees, but leave the amount as discretionary. For example, 29 U.S.C. §§ 216 and 1132 provide that "the court shall … in addition to any judgment … allow a reasonable attorney's fee." All of the cases on which Defendant relies involve statutes expressly providing for an award of "reasonable" attorneys' fees. Interestingly, the Supreme Court of the United States noted the following regarding fee award statutes:

There are over 100 separate statutes providing for the award of attorney's fees; and although these provisions cover a wide variety of contexts and causes of action, the benchmark for the awards under **nearly all** of these statutes is that the attorney's fee must be "reasonable."

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 562, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (emphasis added). Thus, the Supreme Court implicitly acknowledged that not all of the fee award statutes require attorneys' fees to be reasonable.

■ In construing 20 U.S.C. § 1095a, this Court must consider the intent of Congress reflected in the language used. In *Pittsburgh & Conneaut Dock Co. v. Director, Office of Workers' Compensation,* 473 F.3d 253, 266 (6th Cir.2007), the court recently reiterated:

"In all cases of statutory construction, the starting point is the language employed by Congress." *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir.1995). "Moreover, where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Chapman v. Higbee Co.,* 319 F.3d 825, 829 (6th Cir.2003).

"It is a well settled canon of statutory construction that when interpreting statutes, '[t]he language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.'" *United States v. Boucha,* 236 F.3d 768, 774 (6th Cir.2001) (quoting *United States v. Choice,* 201 F.3d 837, 840 (6th Cir.2000)). Similarly, in *Arlington Cent. School Dist. Bd. Of Educ. v. Murphy,* 548 U.S. ——, 126 S.Ct. 2455, 2459, 165 L.Ed.2d 526 (2006), the court said: "We have 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there'" (quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). In *Telespectrum, Inc. v. Public Service Com'n of Kentucky,* 227 F.3d 414, 421 (6th Cir.2000), the court repeated the above quote and added: "This court may not amend or add to the plain language of a statute."

Applying these principles to the statute at hand, it is the opinion of this Court that there is no ambiguity in the language used. Congress obviously knows how to require that attorneys' fees be reasonable; it has done so in "nearly all" of the fee shifting statutes. *Delaware Valley,* 478 U.S. at 562, 106 S.Ct. 3088. It has not placed that requirement in "all" statutes, however. This Court may not add back to 20 U.S.C. § 1095a a word that Congress chose to leave out.

Accordingly, Defendant shall be liable for all amounts that it failed to withhold after November 18, 2004, plus all attorneys' fees and costs incurred by ECMC in collecting the defaulted loan. This Court is aware that the attorneys' fees in this case significantly exceed the amount of the defaulted loan. Defendant has only itself to blame for this disparity. While Defendant protests that there was no need to incur fees after its September 2005 "offer" it is clear from the record that Defendant fought enforcement of the administrative order at every turn and continues to demand judicial involvement. ECMC was

obligated to sue Defendant to collect on the loan pursuant to 34 C.F.R. § 6821.410(b)(9)(i)(F)[5] after Defendant refused to obey the administrative order. Defendant had many opportunities to avoid increased attorneys' fees, but it preferred to litigate.

A somewhat similar situation arose in *Educational Credit Management Corp. v. Cherish Products, Inc.*, 312 F.Supp.2d 1183 (D.Minn.2004) where the employee consolidated her loan three months after the suit was filed, but ECMC had to move for summary judgment for the amounts the employer failed to withhold and its fees and costs. The attorney's fees and costs in that case totaled $17,193.73. The court held that a "reasonable attorneys' fee in this case is $15,000." *Id.* at 1186. ECMC wisely chose not to challenge this result by contesting the court's failure to award the full amount of its fees. As a result, that court did not address the issue of whether the word "reasonable" should be added to the statute. In the present case, however, Defendant has steadfastly refused to pay more than a token amount of the attorneys' fees while forcing ECMC to incur substantially more in fees. The issue of statutory construction was squarely presented by Defendant and is decided against it. *See also Northwest Education Loan Association v. Washington State Grange*, 128 Wash.App. 1053, 2005 WL 1754105 at *4 (2005) ("Accordingly, we award attorney fees and costs to NELA under 20 U.S.C. sec. 1095a(a)(6)").

Moreover, the statutory obligation to pay all attorneys' fees incurred by a guaranty agency in collecting defaulted student loans is logical in light of the purpose of the statute to provide for administrative proceedings to collect small loans and avoid the costs of litigation and the incentives formerly offered to guaranty agencies. Out of an abundance of caution and to ensure that an award of full attorney fees in this case would be compensatory and not a potential windfall, this Court ordered that the billing statements of ECMC's counsel be filed under seal for in camera review. This Court is familiar with attorneys' fees in this community and also has reviewed the billing statements regarding the nature of the work performed. The Court finds both the fees and the work performed to be appropriate.

While the Court will not consider any objections to the "reasonableness" of the fees, it orders that a copy of the billing statements be sent to Defendant. This court-ordered disclosure of the fee statements shall not be deemed a waiver of attorney-client privilege by ECMC. Defendant is directed to maintain the confidentiality of the fee statements and shall not disclose them for any purpose other than as necessary in this litigation. Defendant's Motion to Reconsider the order sealing the statements is denied.

## B. Defendant's Motion to Compel

Before considering ECMC's motion for punitive damages, the Court believes it is appropriate to rule on Defendant's Motion to Compel. Defendant argues that it was not obligated to comply with the Withholding Order because of an erroneous Release issued March 6, 2006 and that, once the Withholding Order was "reinstated," it tendered a check for $7,231.91, which is the full amount of Butler's student loan debt. It asks this Court to compel ECMC to accept this tender "as full satisfaction of Central Equipment's obligation pursuant to the Summary judg-

5. "The guaranty agency shall sue any employer for any amount that the employer, after receipt of the garnishment notice provided by the agency under paragraph (b)(9)(i)(H) of this section, fails to withhold from wages owed and payable to an employee under the employer's normal pay and disbursement cycle."

ment herein to fully comply with the Withholding Order herein" [DE # 27, p. 2].

The Withholding Order issued to Defendant required that it "remittent percent (10%) of Anita Butler's disposable income." The wage garnishment statute at that time provided in part "the amount deducted for any pay period may not exceed 10 percent of disposable pay, except that a greater percentage may be deducted with the written consent of the individual involved." 20 U.S.C. § 1095a(a)(1). Defendant was required under the law to remit to ECMC 10 percent of Butler's disposable pay for each pay period following November 18, 2004 and to continue until the debt was paid in full. Defendant failed to make the required payments and continues to do so. Even if the erroneous March 6, 2006 Release of Withholding Order had some effect, the most it could have done is relieve Defendant from withholding in the future. It certainly did not relieve Defendant from its failed obligations prior to its issuance, and it did not relieve Defendant from compliance with the judgment entered against it.

Additionally, ECMC was not authorized by Butler's consent or any other authority to accept an amount larger than 10 percent of her disposable pay, which was approximately half of the loan total. This offer was not wrongfully rejected as Defendant contends. It also did not satisfy Defendant's obligations under the statute and the judgment. Instead, it merely represented one more baseless effort on Defendant's part to avoid complying with its obligations and to attempt to discourage ECMC from pursuing its legal rights in the face of mounting attorneys' fees. Defendant's motion to compel is denied.

## C. ECMC's Motion for Punitive Damages

■■ The goal of 20 U.S.C. § 1095a is "to improve the efficiency with which defaulted student loans are collected." *Halperin v. Regional Adjustment Bureau, Inc.,* 206 F.3d 1063, 1069 (11th Cir.2000). Congress expressly gave courts discretion to award punitive damages as punishment and deterrence for employers who refuse to comply with administrative withholding orders and unnecessarily complicate the collection process. The discretion of the court is tempered by Due Process considerations.

■ In *State Farm Mutual Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), the court discussed the Due Process Clause constraints on punitive damage awards and elaborated on the *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) guideposts for consideration of a punitive damage award. Those guideposts are: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damage award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Gore,* 517 U.S. at 574–75, 116 S.Ct. 1589.

*State Farm* emphasized that the degree of reprehensibility is "[t]he most important indicium of the reasonableness of a punitive damages award." 538 U.S. at 419, 123 S.Ct. 1513 (quoting *Gore,* 517 U.S. at 575, 116 S.Ct. 1589). Courts were instructed to consider "whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* The court continued:

It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Id.*

In the present case, Defendant initially advised it would not comply with the administrative withholding order and required a court order [DE # 17, Exhibit A, DE # 2–1]. It subsequently attempted to mislead the Court through Paul Huber's May 2006 affidavit saying he advised ECMC he would honor the Withholding Order if only provided a "signed document verifying the wage withholding" [DE # 26–2, ¶ 6]. In his "Answer," however, Huber said he needed "legal proof of the judgment," "Official Legal Documentation," and "some form of legal judgment" [DE # 2–1].

After suit was filed, Defendant contacted the administrative agency and sought to get the account taken back from ECMC. A few months later, it faxed a letter saying a check in settlement was enclosed, but no check was ever sent. It responded to ECMC's reasonable settlement offers with a token offer toward attorneys' fees and later demanded litigation over the fees. In response to the motion for summary judgment, it admitted noncompliance with the Withholding Order, but then attacked the order on technical grounds lacking in merit. Even after judgment was entered against it, Defendant refused to pay ECMC the amounts it failed to withhold and attorneys' fees. Instead, it said it was again going to contact KHEAA. Thereafter, it sought to pay off the loan for Butler to avoid its obligations to ECMC. It continued to protract this litigation unnecessarily by arguing irrelevant statutes and standards for attorney's fees, by moving to compel ECMC to accept its payment of Butler's debt, and by moving to reconsider an order sealing the fee statements.

In considering the reprehensibility of the Defendant's conduct, the Court finds as follows: The harm caused Plaintiff was economic. The conduct did not evince an indifference to the health and safety of others. Both of these factors favor Defendant. While information regarding the financial status of ECMC is not before the Court, it is clear that it was attempting to collect a small loan which could not be done in a "cost-effective" manner through the judicial process. The cost of litigation quickly outpaced the loan amount. Defendant's refusal to obey the administrative order and its efforts to avoid its obligations were not isolated incidents, but involved repeated actions, even after judgment was entered against it by this Court. Defendant claimed at the outset that all it wanted was a court order, but after the court order was entered, it continued its refusal to comply. Finally, the harm caused was not mere accident. Unlike *Cherish Products*, where the employer was told by the Department of Education not to garnish wages because it would impede the debtor's loan consolidation, Defendant had no excuse for failing to comply with the order and the judgment. Instead, it seemed determined to throw as many legal hurdles in ECMC's way as possible, all the while refusing to comply with the withholding order. While the Court finds this conduct to be reprehensible, it is the opinion of this Court that the misconduct is not so reprehensible as to warrant the imposition of further sanctions. Defendant's request for a hearing is denied.

## III. CONCLUSION

The Court, being otherwise fully and sufficient advised, **HEREBY ORDERS:**

A. ECMC's Motion for Award of Damages [DE # 25] is hereby **GRANTED**. Defendant shall pay ECMC immediately the sum equal to 10 percent of Butler's net disposable earnings after November 18, 2004 and shall continue to make said payments for each payroll period until the debt to ECMC is paid in full, or until Defendant no longer has custody, possession or control of any property belonging to Butler, or until further Order of the Court. ECMC's request for punitive damages is denied.

B. Defendant shall pay ECMC immediately the full amount of its attorneys' fees of $25,604.50 and costs of $378.45, and shall further pay any supplemental amount of fees and costs that may be necessitated by continued litigation.

C. ECMC shall send Defendant a copy of its detailed billing statements, and the transmission of same shall not be deemed a waiver of attorney-client privilege. Defendant is ordered to maintain the confidentiality of the statements and shall not disclose them for any purpose other than as necessary in this litigation.

D. Defendant's Motion to Compel Acceptance of Tendered Payment [DE # 27] and Motion to Reconsider [DE # 35] are hereby **DENIED**.

E. Judgment shall be entered contemporaneously with this Opinion and Order.

F. **THIS ACTION IS DISMISSED AND SHALL BE STRICKEN FROM THE ACTIVE DOCKET.**

### *JUDGMENT*

In accordance with the Opinion and Order entered contemporaneously with this Judgment, the Court **HEREBY ORDERS AND ADJUDGES** that:

1. Judgment is hereby entered against Central Equipment Company and in favor of Educational Credit Management Corp. in the sum equal to 10 percent of Anita Butler's net disposable earnings after November 18, 2004, plus attorneys' fees of $25,604.50, and costs of $378.45;

2. Central Equipment Company shall continue to make payments equal to 10 percent of Anita Butler's net disposable earnings for each payroll period until the debt to ECMC is paid in full, or until Defendant no longer has custody, possession or control of any property belonging to Butler, or until further Order of the Court;

3. This judgment is final and appealable as no just cause for delay exists; and

4. This matter is **DISMISSED AND SHALL BE STRICKEN FROM THE ACTIVE DOCKET.**