[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13404
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cv-00007-LGW-RSB

THOMAS L. THOMAS,
In Re: Native American Child A. Thomas,
a.k.a. A. Disanto,

Plaintiff-Appellant,

versus

DORENE DISANTO,
MIKE DEWINE,
Ohio Attorney General,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 27, 2019)

Before TJOFLAT, WILSON, and HULL, Circuit Judges.

PER CURIAM:

Thomas L. Thomas filed a "petition for writ of habeas corpus, coram nobis

and/or judicial review" in the U.S. District Court for Southern District of Georgia.

He did so with the hopes of challenging his son's child custody proceedings, which

were decided in Ohio state court.  The District Court held that Thomas filed the petition in the wrong venue—after all, the defendants are residents of Ohio, the state court proceedings happened in Ohio, and his son resides in Ohio—and dismissed the case rather than transferring it to the proper venue.  The District Court did not transfer the case because it concluded the transferee court would not have jurisdiction to hear the case.

Thomas, proceeding *pro se*, appeals.  He claims the District Court erred because the Ohio state court lacked jurisdiction to hear a child custody case involving his son.  Thomas says his son is a member of a Native American Indian tribe, the Pembina Nation Little Shell Band of North America Tribe (the "Pembina Tribe").  Thus, jurisdiction over his son lies exclusively with the Pembina tribal court.  We disagree and affirm.

## I.

The District Court held that Thomas filed his petition in the wrong venue: rather than filing in the Southern District of Georgia, he should have filed in the Northern District of Ohio.  We review a district court's dismissal based on improper venue for abuse of discretion.  *Algodonera De Las Cabezas, S.A. v. Am. Suisse Capital, Inc.*, 432 F.3d 1343, 1345 (11th Cir. 2005) (per curiam) (citing *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990)).  A district court abuses its discretion when it "fails to apply the proper legal standard

or to follow proper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Heffner v. Blue Cross & Blue Shield of Ala.*, 443 F.3d 1330, 1337 (11th Cir. 2006) (quoting *Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1335 (11th Cir. 2003)).

> Generally, in a civil action in federal court, venue is proper in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or
>
> (3) if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Here, both named defendants are residents of Ohio, and Thomas wants to challenge Ohio state court proceedings. Thomas resides in Georgia, and that's the only connection between the State of Georgia and this case. Thus, the District Court did not abuse its discretion in finding that Thomas filed his petition in the wrong venue.[1]

II.

---

[1] Here, the Magistrate Judge filed a Report and Recommendation ("R&R") *sua sponte* and found that the venue was improper. A district court may *sua sponte* dismiss a suit for improper venue, but it must "first giv[e] the parties an opportunity to present their views on the issue." *Algodonera De Las Cabezas*, 432 F.3d at 1345 (quoting *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1259 (11th Cir. 1988)). Thomas filed objections to the R&R and thus had a chance to be heard on the issue.

If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Here, the District Court found that transferring the case would not be in the interest of justice because the transferee court would not have jurisdiction over the case.  The District Court made the following conclusions: (1) the *Rooker-Feldman* doctrine[2] prevents federal district courts from reviewing the Ohio state court proceedings,[3] (2) Thomas is not entitled to a writ of *coram nobis*, (3) Thomas is not entitled to habeas corpus relief, and (4) the Pembina tribal court does not have exclusive jurisdiction over Thomas's son because the Pembina Tribe is not a recognized Indian tribe under the Indian Child Welfare Act (the "ICWA").

We consider each separately.

## A.

"We review questions of subject matter jurisdiction *de novo*," *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 (11th Cir. 2001) (quoting *Singleton v. Apfel*, 231 F.3d 853, 856 (11th Cir. 2000)), and we review a district court's application of the *Rooker-Feldman* doctrine *de novo*, *Lozman v. City of Riviera*

---

[2] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983).

[3] Alternatively, the District Court concluded that even if the child custody proceedings are ongoing, federal courts should abstain under *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971).

*Beach*, 713 F.3d 1066, 1069–70 (11th Cir. 2013) (citing *Doe v. Fla. Bar*, 630 F.3d 1336, 1340 (11th Cir. 2011).

"The *Rooker-Feldman* doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman*, 259 F.3d at 1332. It applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Nicholson v. Shafe*, 558 F.3d 1266, 1273 (11th Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1520 (2005)). We have applied *Rooker-Feldman* several times in the context of child custody issues, and we have held that we cannot interfere with final judgments rendered by state courts. *See Goodman*, 259 F.3d at 1332–33 (discussing cases); *Liedel v. Juvenile Court of Madison Cty.*, 891 F.2d 1542, 1545–46 (11th Cir. 1990); *Staley v. Ledbetter*, 837 F.2d 1016, 1017–18 (11th Cir. 1988) (per curiam).

Here, assuming the state court proceedings are final,[4] Thomas is attempting to challenge child custody actions in state court. Although we're unable to tell

---

[4] It is not entirely clear from the record whether the state court proceedings are final. But even if they are ongoing, we agree with the District Court's alternative holding that *Younger* abstention would prevent a federal court from intervening in any ongoing proceedings.

In *Younger*, the Supreme Court reversed a District Court judgment enjoining a criminal defendant's prosecution in a pending state court action, noting that there is a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special

from the petition exactly what the Ohio state court decided, it seems pretty clear that the state court's judgment related to the custody of Thomas's son. The federal district courts do not have jurisdiction over this sort of challenge, and the District Court's finding is correct.

B.

The All Writs Act says that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their

circumstances." 401 U.S. at 40–41, 91 S. Ct. at 478–79. The Supreme Court held that, while the federal courts had jurisdiction over the claim, they were required to abstain from exercising that jurisdiction, chiefly because of "the notion of 'comity,' that is, a proper respect for state functions." *Id.* at 44, 91 S. Ct. at 750. We have stated that "[a]lthough *Younger* concerned state criminal proceedings, its principles are 'fully applicable to noncriminal judicial proceedings when important state interests are involved.'" *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521 (1982)).

In determining whether *Younger* abstention applies, the Court must answer three questions: "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* (alteration in original) (quoting *Middlesex Cty. Ethics Comm.*, 457 U.S. at 432, 102 S. Ct. at 2521). If the subject matter of the action involves "[p]roceedings necessary for the vindication of important state policies or for the functioning of the state judicial system," it is an important state interest. *Id.* (quoting *Middlesex Cty. Ethics Comm.*, 457 U.S. at 432, 102 S. Ct. at 2521). As to the second question, the Supreme Court has noted that "[f]amily relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435, 99 S. Ct. 2371, 2383 (1979). As to the third, this Court has said that "[a] federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *31 Foster Children*, 329 F.3d at 1279 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S. Ct. 1519, 1528 (1987)). Here, if the state proceedings are ongoing, they would satisfy all three questions.

The Supreme Court has recognized exceptional circumstances in which *Younger* abstention might be inappropriate: where the irreparable injury is "great and immediate," where the state law in question is "flagrantly and patently violative of express constitutional prohibitions," or where the plaintiff demonstrates bad faith, harassment, or other "unusual circumstances" justifying equitable relief. *Mitchum v. Foster*, 407 U.S. 225, 230, 92 S. Ct. 2151, 2156 (1972) (quotations omitted). This case does not fit within these exceptional circumstances, as Thomas just disagrees with the state court proceedings.

6

respective jurisdictions and aggreegable to the usages and principles of law." 28 U.S.C. § 1651(a). We have explained that "[t]he Act does not create any substantive federal jurisdiction," but "[i]nstead, it is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004).

As for the writ of *coram nobis*, the Supreme Court has said that the writ "was available at common law to correct errors of fact. It was allowed without limitation of time for facts that affect the 'validity and regularity' of the judgment, and was used in both civil and c[ri]minal cases." *United States v. Morgan*, 346 U.S. 502, 507, 74 S. Ct. 247, 250 (1954). That said, the Federal Rules of Civil Procedure have abolished the writ of error *coram nobis* in civil cases. *See id.* at 505 n.4, 74 S. Ct. at 249 n.4; *United States v. Mills*, 221 F.3d 1201, 1203 n.2 (11th Cir. 2000) ("The writ of coram nobis has been abolished in civil cases."); Fed. R. Civ. P. 60(e).

Here, Thomas filed a civil case, so the writ of *coram nobis* is unavailable. Plus, the federal district courts do not have jurisdiction over Thomas's petition, and the writ of *coram nobis* cannot be used to expand the jurisdiction of the federal courts. Thus, the District Court was correct in finding that a federal district court cannot issue this.

7

C.

Thomas also asked for a writ of habeas corpus.  But "federal habeas has never been available to challenge parental rights or child custody." *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 511, 102 S. Ct. 3231, 3237 (1982).  "The federal writ of habeas corpus, representing as it does a profound interference with state judicial systems and the finality of state decisions, should be reserved for those instances in which the federal interest in individual liberty is so strong that it outweighs federalism and finality concerns." *Id*. at 515–16, 102 S. Ct. at 3239–40.  Thus, the District Court was correct that no federal district court can grant Thomas habeas relief.

D.

Finally, the District Court found that the Pembina tribal court does not have exclusive jurisdiction over Thomas's son because the Pembina Tribe is not a recognized Indian tribe under the ICWA.  We review a district court's interpretation of a federal statute *de novo*.  *Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 914 (11th Cir. 2013) (per curiam) (citing *Halperin v. Reg'l Adjustment Bureau, Inc.*, 206 F.3d 1063, 1066 (11th Cir. 2000)).

The ICWA says that "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe."  25 U.S.C. § 1911(a).  In turn,

8

an "Indian child" is an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." *Id.* § 1903(4).  Finally, an "Indian tribe" is "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary[5] because of their status as Indians." *Id.* § 1903(8).

The Bureau of Indian Affairs publishes in the *Federal Register* the list of "Tribal entities recognized and eligible for funding and services . . . by virtue of their status as Indian Tribes"—the Pembina Tribe is not listed.  *See* Indian Entities Recognized and Eligible To Receive Services from the United States Bureau of Indian Affairs, 83 Fed. Reg. 34863 (July 23, 2018).[6]  Thus, the ICWA is not triggered, and we have no reason to doubt the Ohio state court's jurisdiction to decide the custody issue.  Thus, we are back to the *Rooker-Feldman* doctrine, and the ICWA does not provide an exception in the case.  The District Court's interpretation of the statue was correct.

## III.

The judgment of the District Court is

---

[5] The "Secretary" is the "Secretary of the Interior."  *Id.* § 1903(11).

[6] *See also Delorme v. United States*, 354 F.3d 810, 814 n.6 (8th Cir. 2004) ("The Little Shell Band of Chippewa Indians of North Dakota (also known as the Little Shell Pembina Band of North America) is a federally unrecognized band . . . .").

**AFFIRMED.**